**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

SOPHIA TULLY,

        Plaintiff,

  v.                                          Civil Action 2:20-cv-00163
                                                Judge James L. Graham
                                                Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff, Sophia Tully, brings this action pro se under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons detailed below, the Magistrate Judge **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 5) and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

    **A.    Summary of Proceedings**

Plaintiff filed her applications for DIB and SSI on January 25, 2017, alleging disability beginning October 30, 2016, due to a herniated disc lower back pain; right SI joint pain; and pain following surgery to remove a tumor from her neck. (Tr. 247–57, 295). After her applications were denied initially and on reconsideration, an Administrative Law Judge ("ALJ") held a hearing on June 19, 2019, at which Plaintiff, represented by counsel, appeared and testified. (Tr. 47–77). The ALJ denied benefits in a written decision on July 3, 2019. (Tr. 16–41). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7).

Plaintiff initiated this action pro se on January 10, 2020. (Doc. 1.) Before the Court is Plaintiff's Statement of Specific Errors (Doc. 5); Plaintiff's Notice of Filing Verified Statement of Recorded Fact (Doc. 6); Plaintiff's Notice of Filing of Corroborating Evidence to Claim of Unconstitutionality, to which a page printout of medical diagnoses has been attached (Doc. 7); Commissioner's Memorandum in Opposition (Doc. 8); Plaintiff's Reply (Doc. 11); Plaintiff's Additional Evidence of Unconstitutionality (Doc. 12); Plaintiff's request to have a Physical Assessment Examination from OSU Wexner Medical Center East entered into the record (Doc. 13); Plaintiff's request to have her statement entered into the record, to which an invoice for dental procedures has been attached (Doc. 14); and Plaintiff's request to have an Exhibit from the administrative proceedings made part of the record (Doc. 15).[1]

### B. Relevant Record Evidence

#### 1. *Plaintiff's Hearing Testimony*

Plaintiff testified that, after beginning to experience car sickness, she had an MRI, which revealed a syrinx tumor in her neck the size of a small banana. (Tr. 57–58). She had surgery to remove the tumor in approximately December 2015. (*Id*.) Despite directions to take a year off work following surgery, Plaintiff returned to work as a flight attendant after only three months because she really wanted to fly. (Tr. 61). She continued to experience pain in her neck averaging a level five on a ten-point scale, and driving exacerbated her neck pain. (Tr. 58–59). She could not turn her head right or left and could reach her arms out only a short distance. (Tr. 60.)

A year later, Plaintiff had four screws inserted at the L5-S1 level of her spine. (Tr. 59.) A year after that, she underwent a spinal cord stimulator test. (*Id*.) She then had a permanent spinal

---

[1] Plaintiff last asks the Court to enter Exhibit 7B/4 into the record. (Doc. 15.) That document is already part of the certified record. (Doc. 9–4, Tr. 165).

cord stimulator implanted but testified that she still has pain in her low back and right hip. (Tr. 61–62). She further testified that, when sitting or driving for more than twenty minutes, her feet sometimes move on their own and curl up and her right calf locks up. (Tr. 62–63). She also testified that the screws in her back impede her movement, and she experiences pain in her back causing her stomach muscles to cinch and making her vomit. (Tr. 63.) She also indicated that bending forward causes pain. (Tr. 63–64). For pain relief, Plaintiff receives massage and acupuncture therapy, stretches, and uses her sister's swimming pool. (Tr. 65–66.) Lying down also helps. (Tr. 65).

Additionally, Plaintiff testified that, she is often unable to move her right leg and her roommate has to help her to get in and out of the shower and get dressed. (Tr. 64–65). Her roommate also helps with grocery shopping and housecleaning. (Tr. 66–67, 68). She is no longer able to engage in activities that she used to enjoy such as running, working out, traveling, and walking her dog. (Tr. 67–68). Despite that, she can still spend five to six hours each day with her young grandchildren and occasionally babysit them with assistance from her roommate. (Tr. 70–72).

### 2. *Relevant Medical Records*

The ALJ usefully summarized Plaintiff's medical records and symptoms related to her severe impairments:

> Magnetic resonance imaging ("MRI") scan results from October 2015 documented combination of degenerative disc along with broad based disc bulging at L4-L5 with disc extrusion of the right with some pressure on the L5 nerve root, not notable on the left, some changes at L3-L4 with some degeneration and facet changes but no significant stenosis, other changes to a lesser degree cephalad to this, and relatively unremarkable L5-S1 (Exhibits 4F/6 and 10F/47). X-ray results from April 2017 documented dextroscoliosis measuring around ten degrees from L3-L4 to the upper lumbar spine, with some angulation resulting from the lower lumbar levels either L4-L5 or L5-S1 (Exhibits 8F/49 and 10F/47). MRI scan results from April 2017 documented six lumbar-type vertebral bodies, far right

3

> lateral disc protrusion at L5-L6 resulting in moderate right foraminal narrowing, broad based left paracentral/central disc protrusion at this level contacting the left L6 nerve root in the lateral recess and resulting in mild left foraminal narrowing, and far left lateral disc protrusion at L4-L5 contacting the extraforaminal left L4 nerve root and resulting in mild left L4-L5 foraminal narrowing (Exhibits 5F/5, 8F/9–10, and 10F/50–51). MRI and discography results from June 2017 documented L6 vertebral body, some degenerative changes at L5-L6 and to a lesser degree at L4-L5, and normal architecture at L3-L4 and L6-S1 (Exhibits 7F/6, 8F/51–53, and 10F/39–40). The claimant underwent spinal cord stimulator ("SCS") trial in October 2017 (Exhibit 7F/20). The claimant underwent anterior lumbar and interbody fusion, insertion of cage, and placement of plate and screws procedure at L5-L6 procedure in December 2017 (Exhibits 7F/40 and 8F/156–161). X-ray results from December 2017 documented postoperative changes of anterior fixation involving the lower lumbar spine at L5 and the sixth non-rib-bearing lumbar vertebral body, intact, with alignment maintained (Exhibit 16F/137). X-ray results from January 2018 documented cage and anterior to mentation at L5-L6 in proper position (Exhibit 10F/16). X-ray results from March 2018 documented cage and anterior plate at L5-L6 in proper position (Exhibit 7F/40). X-ray results from April 2018 documented stable postsurgical changes status post anterior interbody fusion at L5-L6 with transitional anatomy at the lumbosacral junction and no acute fracture (Exhibit 16F/110). The claimant underwent thoracic SCS permanent placement procedure in May 2018 (Exhibits 7F/44 and 9F/118–121). X-ray results from August 2018 documented cage and anterior plate at L5-L6 in proper position with no findings to suggest pseudarthrosis or failure fixation (Exhibit 10F/8). X-ray results from November 2018 documented intact anterior instrumentation and cage placement at L5-L6 with no evidence of failure fixation or nonunion (Exhibit 16F/63–64). Computerized tomography ("CT") scan imaging results from December 2018 documented postsurgical changes from L5-L6 discectomy and anterior fixation, multilevel degenerative changes of the spine without spinal canal stenosis, and no acute osseous abnormality and evidence of hardware complication (Exhibits 9F/192–193 and 16F/60–61). The claimant underwent excision of benign cervical tumor of spinal intradural intramedullary space procedure in December 2015 (Exhibits 3F/4 and 15F/30–31). The evidence also documents the clinical diagnosis of CPS related to the claimant's spinal conditions and related symptoms (Exhibits 4F/7 and 10F/1).

(Tr. 19–20).

The ALJ also summarized Plaintiff's medical records and symptoms related to her non-severe physical impairments:

> The claimant experiences other transient physical impairments managed by conservative care including anemia, headaches, rhinitis, tachycardia, trichomoniasis, and vitamin D deficiency (Exhibits 5F/3, 7F/9, 8F/19, 118, and

4

122, and 16F/3 and 163), and related symptoms. However, the claimant's other physical impairments and related symptoms have no more than minimal effect individually or in combination on her ability to work and result in no functional limitations and restrictions as of the alleged onset date of disability.

There is no evidence of functional limitations and restrictions attributable to these conditions and related symptoms that lasted or are expected to last for a continuous period of at least 12 months as of the alleged onset date of disability. 20 CFR 404.1509 and 416.909 state that unless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months; we call this the durational requirement. The claimant endorsed doing well, and she presented as well appearing at different times (Exhibit 8F/133, 141, 145, and 153). The claimant's vitamin D deficiency is managed with supplements and well controlled (Exhibit 8F/46). There is no evidence of transfusion attributable to the claimant's anemia. The claimant's rhinitis and related symptoms are well controlled and merely seasonal (Exhibit 8F/118 and 122). The claimant repeatedly had negative cardiovascular, endocrinal gastrointestinal, genitourinary, and respiratory findings, with chest and lungs clear to auscultation, normal breath sounds, and no chest pain, rales, rhonchi, shortness of breath, syncope, and wheezing (Exhibits 3F/5, 4F/7, 10, 12, and 16, 5F/4 and 10, 7F/11, 17, 25–26, 34, 37, 45, and 49, 8F/20, 48–49, 124, 133, 146, and 152, 9F/108 and 113, 12F/5, and 16F/5, 9, 12, 15–16, 19, 21–22, 26–27, 29–30, 32–33, 37–40, 42–43, 47–48, 51–52, 58, 131, 134, and 163). The claimant repeatedly had pulse oximetry of at least 96% on room air (Exhibits 5F/4 and 11, 7F/17 and 26, 8F/20, 34, 48, 84, 124, 141, and 146, 9F/108 and 115, 12F/5, and 16F/12). The claimant is capable of greater than 4.0 metabolic equivalent of tasks (Exhibits 8F/46 and 122, and 9F/105). The claimant does not experience deep or superficial vein thrombosis (Exhibit 16F/140). The claimant does not experience chronic edema (Exhibits 3F/5, 4F/7, 12, and 16, 7F/34 and 37, 8F/146, 9F/108 and 113, 10F/20, and 16F/5, 9, 12, 16, 19, 22, 27, 20, 30, 33, 38, 40, 43, 48, 52, 58, 135, and 163–164). The claimant had negative and normal diagnostic imaging results of her brain and head, she generally denied and did not demonstrate chronic headaches, and this condition is noted as well controlled and not intractable (Exhibits 12F/7 and 16F/12, 15, 19, 21, 26, 29, 32, 37, 39, 42, and 51–52). The claimant did not demonstrate chronic rash at different times (Exhibit 16F/47, 51, and 58). This evidence does not reasonably justify the imposition of functional limitations and restrictions attributable to the claimant's other physical impairments, and related symptoms, as of the alleged onset date of disability. Accordingly, there is no evidence of functional limitations and restrictions attributable to the claimant's other physical impairments, and related symptoms, as of the alleged onset date of disability.

(Tr. 20–21).

### C. Summary of the ALJ's Decision

The ALJ found that Plaintiff met insured status requirements through December 31, 2021,

5

and had not engaged in substantial gainful activity since October 30, 2016, the alleged onset date. (Tr. 18). Next, she concluded that Plaintiff suffers from the following severe impairments: degenerative changes of the lumbar spine; status post excision of benign cervical tumor of spinal intradural intramedullary space; and chronic pain syndrome ("CPS"). (Tr. 19). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 29).

As for Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, it is determined that the claimant has the residual functional capacity to perform light . . . work as defined in 20 CFR 404.1567(b) and 416.967(b). She can sit for up to six hours in an eight-hour workday, and stand and/or walk for up to four hours in an eight-hour workday. She must alternate between sitting and standing every 45 minutes for three to five minutes at a time, but can remain on task while doing so. Balancing, climbing ramps and stairs, crawling, crouching, kneeling, and stooping, are each limited to no more than occasionally. She cannot climb ladders, ropes, and scaffolds, and must avoid all exposure to workplace hazards.

(*Id.*).

Upon review of the evidence, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not sufficiently supported by the medical evidence and other evidence in the record." (Tr. 30). The ALJ elaborated:

> There is no evidence of additional functional limitations and restrictions attributable to the claimant's physical impairments and related symptoms, which are generally stable, tolerable, and well controlled as of the alleged onset date of disability. The claimant repeatedly had full range of motion of her neck (Exhibits 5F/5 and 11, 7F/11 and 18, 8F/20, and 16F/5, 9, and 12). The claimant does not experience bladder and bowel incontinence (Exhibits 5F/2, 7F/46 and 50, 8F/23, 14F/2, and 16F/131). The claimant has had negative and normal straight leg raising test results (Exhibit 7F/26). The claimant had negative and normal x-ray results of her hips (16F/106), and she has full and normal range of motion and strength of her hips (Exhibits 7F/26 and 10F/47). The claimant reported stable spinal symptoms in June 2017 (Exhibit 7F/6). The claimant reported doing very well overall, and she endorsed being physically active in October 2017 (Exhibit 7F/15). The claimant reported doing well in January 2018 (Exhibit 7F/40). The claimant's X-ray results from December 2017 documented alignment maintained (Exhibit 16F/137). The

6

claimant's X-rays results from January 2018 documented cage and anterior to mentation at L5-L6 in proper position (Exhibit 10F/16). The claimant's x-ray results from March 2018 documented cage and anterior plate at L5-L6 in proper position (Exhibit 7F/40). The claimant's x-ray results from April 2018 documented stable postsurgical changes status post anterior interbody fusion at L5-L6 with transitional anatomy at the lumbosacral junction and no acute fracture (Exhibit 16F/110). The claimant's X-ray results from August 2018 documented cage and anterior plate at L5-L6 in proper position with no findings to suggest pseudoarthrosis or failure fixation (Exhibit 10F/8). The claimant's x-ray results from November 2018 documented intact anterior instrumentation and cage placement at L5-L6 with no evidence of failure fixation or nonunion (Exhibit 16F/63–64). The claimant's CT scan imaging results from December 2018 documented no spinal canal stenosis, acute osseous abnormality, and evidence of hardware complication (Exhibits 9F/192–193 and 16F/60–61). The claimant endorsed doing well, and she presented as well appearing at different time (Exhibit 8F/133, 141, 145, and 153). The claimant does not experience chronic edema (Exhibits 3F/5, 4F/7, 12, and 16, 7F/34 and 37, 8F/146, 9F/108 and 113, 10F/20, and 16F/5, 9, 12, 16, 19, 22, 27, 30, 33, 38, 40, 43, 48, 52, 58, 135, and 163–164). There is no evidence that the claimant's recommendation for use of a wheeled walker lasted or is expected to last for a continuous period of at least 12 months. The claimant was repeatedly ambulatory and able to walk a flight of stairs with stable gait and no problems and chronic falls (Exhibit 8F/23, 32–33, 46). The claimant repeatedly had negative musculoskeletal and neurological examination results, with full, good, intact, and normal cranial nerves, range of motion, reflexes, sensory, strength, and tone (Exhibits 4F/7, 10, 12–13, and 16, 5F/4–5 and 11, 7F/11, 17–18, 26, 34, and 37, 8F/20–21, 48, 124, 133, 141, and 153, 9F/13, 108, 113, and 116, 10F/2, 5, 12, 16, 42, and 46–47, 12F/5–6, 14F/2, and 16F/43, 135, and 163–165). The claimant has normal radial and ulnar pulses (Exhibit 12F/6). The claimant does not experience chronic tremors (Exhibit 7F/46 and 49). The claimant had negative and normal Babinski, Hoffmann, and Romberg sign and test results (Exhibits 5F/5 and 11, 7F/11, 18, and 26, 8F/141 and 153, and 14F/2). The evidence also documents non-compliance with prescribed pain medication (Exhibits 7F/31 and 16F/144), which would not be expected if her spinal conditions and related symptoms are as severe as she purports as of the alleged onset date of disability. This evidence does not reasonably justify physical functional limitations and restrictions, and could support a determination that the claimant is less physically limited than set forth above as of the alleged onset date of disability. Accordingly, there is no evidence of additional physical functional limitations and restrictions as of the alleged onset date of disability.

(Tr. 30–31).

As for the opinion evidence, the ALJ considered the only two medical opinions in the record—those of state agency reviewers Dr. Stephen Sutherland and Dr. Leon D. Hughes. (Tr.

32–33). They opined that Plaintiff could perform light work (i.e., occasionally lifting 20 pounds and frequently lifting up to 10 pounds), frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolding due to risk of falling. (Tr. 90–92, 100–02; 120–22, 137–39). They further opined that Plaintiff should avoid all exposure to hazards, specifically, unprotected heights. (*Id.*). The ALJ gave partial weight to these opinions to the extent they are consistent with the totality of the evidence. (Tr. 32–33). The ALJ further noted that "evidence received into the record after these opinions concerning the claimant's physical status did not otherwise provide any credible or objectively supported new and material information that would alter these findings concerning her functional limitations and restrictions as of the alleged onset date of disability." (Tr. 33).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence,

it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### III. ANALYSIS

Plaintiff, in her statement of errors, does not explain how the ALJ committed reversible error. Instead, her statement of errors contains only a single paragraph devoid of substance followed by excerpts from the decision, presumably with which Plaintiff disagrees. (Doc. 5 at 1). For example, she asserts:

> An inspection of Plaintiff's July 3, 2019, Social Security Administration Disability Decision, compelling when viewed in its entirety on its own, a factual chronology of erroneous, illegal, malicious acts of misconduct, done in the exercise of judicial function, exploiting, manipulating and manufacturing crucial medical evidence and statements, creating factually erroneous illusory and fallacious arguments, surreptitiously incorporating relevantly contradictory crucial medical evidence and statements into Plaintiff's Administrative Record, crafting, in its entirety, a disingenuous, illogical, irrational, inconsistent and extremely confusing Administrative Judge Decision, in essence, maliciously designing an insurmountable obstacle, with no true way to overcome, no longer judicial acts, but individual acts, committed in bad faith, telling of her own personal goals and beliefs, ignoring the guidelines that define her power and beyond her legal jurisdiction, violated Plaintiff's Constitutional Right and Due Process of Law. Irrefutable evidence the result reached, legally erroneous, fundamentally unfair, ARBITRARY, capricious and a grave abuse of discretion.

(*Id.*).

Plaintiff's subsequent filings, (*see* Docs. 6, 7) are similarly devoid of substance or specific citations to the record and do not specify how the ALJ purportedly erred. For example, she attaches medical evidence she claims

> expos[es] what the judge really knew at the time the decision was made, from the perspective of a reasonable objective observer, tangible proof displayed by the judge of an extremely high level of interference, calculated dishonesty and deceit, conduct occurring outside the performance of her official duties, sufficient gravity to warrant the conclusion, the judge's actions, findings and conclusions are not supported by substantial evidence, passing the test, creating a glaringly real perception and appearance of impropriety, leaving only one conclusion, the judge's ability to carry out her judicial responsibilities with fundamental fairness, integrity,

>impartiality and competence is impaired, undermining public trust and confidence in our administrative process, actions absolutely not a judicial function and conflicts with any definition of a judicial function. Persuasive evidence affirming Administrative Law Judge Noceeba Southern under the United States Constitution did not FAITHFULLY and CONSISTENTLY adhere to her oath of office and aggressively pursue justice for ALL.

(Doc. 7 at 1).

Defendant, in response, asserts that Plaintiff's statement of errors and subsequent filings "are skeletal and undeveloped, and should be considered waived." (Doc. 8 at 4). The Undersigned agrees. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.'" *Bawkey v. Comm'r of Soc. Sec.*, No. 1:17-CV-1068, 2019 WL 1052191, at *8 (W.D. Mich. Feb. 6, 2019), *report and recommendation adopted*, No. 1:17-CV-1068, 2019 WL 1044448 (W.D. Mich. Mar. 5, 2019) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). Importantly, pro se litigants, like Plaintiff here, are held to this same standard. *See Bawkey*, 2019 WL 1052191 (citing *Reid v. Quality Serv. Integrity*, No. 16-5107, 2016 WL 11258239, at *1 (6th Cir. Aug. 19, 2016) (internal citations omitted) ("Although pro se filings should be liberally construed, pro se litigants must attempt to develop arguments regarding issues raised in their appellate briefs in order to preserve those issues for appeal.")).

Plaintiff has made no attempt to develop her arguments, and the Undersigned will not do so for her. *See, e.g.*, *Doolittle v. Comm'r of Soc. Sec.*, No. 18-4176, 2019 WL 6464019, at *2 (6th Cir. Sept. 4, 2019) (holding that pro se plaintiff waived "any possible challenge to the ALJ's ruling" where "[s]he ma[de] no specific arguments to support [her] assertions, [ ] and d[id] not refer to any part of the record or cite any authority on which she relie[d]"); *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006) ("This challenge warrants little

10

discussion, as Hollon has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record. Under these circumstances, we decline to formulate arguments on Hollon's behalf, or to undertake an open-ended review of the entirety of the administrative record[.]"); *Bawkey*, 2019 WL 1052191, at *8 (holding that pro se plaintiff waived his arguments where his "claims of error [were] nothing more than a list of grievances unaccompanied by any effort at developed argumentation"); *Tarver v. Comm'r of Soc. Sec.*, No. 1:10 CV 2721, 2011 WL 3900579, at *1 (N.D. Ohio July 8, 2011), *report and recommendation adopted*, No. 1:10CV2721, 2011 WL 3911116 (N.D. Ohio Sept. 6, 2011) ("This Court does not conduct a *de novo* review in social security proceedings, and certainly cannot be expected to craft an argument on Plaintiff's behalf."). In sum, nothing in Plaintiff's filings can be construed as a legal argument concerning the Commissioner's alleged error.

In any event, even assuming Plaintiff is attempting to argue that the ALJ misinterpreted or cherry-picked the evidence (*see generally* Doc. 11), such argument is without merit. Upon review of the ALJ's decision and record in this case, the Undersigned finds that the ALJ did not fail to consider evidence, cherry-pick evidence, or play doctor. Instead, she complied with the pertinent regulations and considered all the evidence in the longitudinal record, including objective medical findings, Plaintiff's testimony, and relevant medical opinions. 20 CFR §§ 404.1520(e), 404.1529(c)(3), 416.920(e), 416.929(c)(3). Plaintiff's attempt to argue otherwise appears to be nothing more than a differing interpretation of the medical evidence in this case. But the ALJ "retains a zone of choice in deciding whether to credit conflicting evidence," *Schmiedbusch v. Comm'r of Soc. Sec.*, 536 Fed. App'x. 637, 649 (6th Cir. 2013), and the ALJ acted well within her discretion in reaching her decision.

Finally, the Undersigned notes that Plaintiff has submitted new evidence which was not

before the ALJ. (Docs. 7, 13, 14). "Evidence which was not a part of the record on which the Commissioner's final decision was based may not be considered as part of the administrative record for purposes of judicial review." *Cocroft v. Colvin*, No. 2:13-CV-729, 2014 WL 2897006, at *2 (S.D. Ohio June 26, 2014) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Stevens v. Astrue*, 839 F. Supp. 2d 939, 951 (S.D. Ohio 2012)). "Judicial review is confined to the evidence that was available to the Commissioner." *Cocroft*, 2014 WL 2897006, at *2 (citing *Hollon ex rel. Hollon*, 447 F.3d at 487). "Evidence submitted in the first instance to the district court may only be considered in determining whether remand is appropriate pursuant to sentence six of 42 U.S.C. § 405(g)." *Cocroft*, 2014 WL 2897006, at *2 (citing *Stevens*, 839 F. Supp. 2d at 951).

But Plaintiff has not requested a sentence six remand. *See Cocroft*, 2014 WL 2897006, at *2 (noting that plaintiff simply submitted new evidence without requesting a sentence six remand). Regardless, Plaintiff has not met her burden to show that a sentence six remand is warranted. And her burden is a heavy one—otherwise claimants might be encouraged to seek out favorable medical evidence after unfavorable administrative determinations. To satisfy her burden, Plaintiff must show "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g). Plaintiff has not met her burden.

To begin, Plaintiff does not even attempt to argue that the evidence is new or material. Nor does she make an effort to satisfy the good cause standard. Again, the burden to do so is hers—not the Undersigned's. *See Cocroft*, 2014 WL 2897006, at *12 (citations omitted) ("The plaintiff has the burden of establishing that the evidence is new and material and that there is good cause for not having presented the evidence to the Aministrative Law Judge."). Besides, upon review of

the subsequent records, it is clear they do not justify remand. For example, some records are not new. (*See generally* Docs. 13, 14). Others, while new, are not material, including for instance, lists of diagnoses and surgical procedures (Doc. 7) that are cumulative of evidence already in the record. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 277–78 (6th Cir. 2010) (noting that cumulative evidence is not material).

In sum, Plaintiff has failed to establish reversible error or that the matter should be remanded based on new and material evidence.

IV. **CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

V. **PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.


Date: June 9, 2020                                        /s/ Kimberly A. Jolson
                                                                                 KIMBERLY A. JOLSON
                                                                                  UNITED STATES MAGISTRATE JUDGE